**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000404
31-DEC-2019
08:08 AM**

NO. CAAP-19-0000404

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF KS

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 17-00232)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Mother-Appellant (**Mother**) appeals from the Order Terminating Parental Rights (**Termination Order**) and Letters of Permanent Custody, which were both entered on April 23, 2019, by the Family Court of the First Circuit (**Family Court**).[1] Mother also challenges the Family Court's May 22, 2019 Orders Concerning Child Protective Act (**Order Denying Immediate Review**), as well as Findings of Fact (**FOFs**) 27-32, 40-43, 47-49, and 59-61, and Conclusions of Law (**COLs**) 2-5, and 12-16, which were set forth in the Family Court's June 27, 2019 FOFs and COLs.

Mother primarily contends that the Family Court abused its discretion in: (1) "its unconscionable sanction of terminating Mother's parental rights for a single non-appearance on April 18, 2019"; and (2) its "equally unconscionable

---

[1] The Honorable Brian A. Costa presided.

deprivation of affording Mother a reasonable opportunity to be heard at a meaningful time and in a meaningful manner" on Mother's Motion for Immediate Review, which was received by the Family Court on May 15, 2019, filed on May 20, 2019, and set for hearing on May 22, 2019.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's contentions as follows:

(1) Mother contends that the Family Court abused its discretion in orally entering default against her and then entering the Termination Order. We review the Family Court's decision in context of the proceedings leading to that decision.

On October 6, 2017, then twelve-year-old KS was taken into protective custody by the Honolulu Police Department, and Petitioner-Appellee Department of Human Services (**DHS**) assumed temporary foster custody and placed KS in an Emergency Shelter Home. Mother's Boyfriend (**Boyfriend**), with whom Mother and KS lived, had allegedly forced KS to have vaginal and anal intercourse with him on two occasions; Boyfriend denied it. On October 9, 2017, Mother consented to a voluntary foster custody placement of KS, but told the DHS social worker that she did not believe that Boyfriend sexually harmed KS.

After an October 30, 2017 hearing, based on a DHS Safe Family Home Report, a DHS Family Service Plan was ordered, and DHS's petition for foster custody was granted. Mother appeared at the hearing, was represented by appointed counsel, and

2

required a Chuukese interpreter. The whereabouts of KS's father (**Father**) was unknown, but it was believed that he was somewhere in Micronesia.

Mother appeared at further hearings on April 18, 2018, October 3, 2018, December 10, 2018 (albeit late, reportedly due to a misunderstanding as to the hearing time), and January 7, 2019. At the October 3, 2018 hearing, the Family Court ordered that the December 10, 2018 hearing would be calendared as a show cause hearing pursuant to Hawaii Revised Statutes (**HRS**) § 587A-29 (2018),[2] as well as a periodic review hearing pursuant to HRS § 587A-30 (2018),[3] and a permanency hearing pursuant to HRS § 587A-31 (2018).[4] Prior to Mother's late arrival at the

---

[2]     HRS § 587A-29 provides:

§ **587A-29 Show cause hearing.** At any stage of the proceeding, the court may set a show cause hearing at which a child's parents shall have the burden of presenting evidence as to why the case should not be set for a termination of parental rights or legal guardianship hearing.

[3]     HRS § 587A-30 requires the family court to conduct periodic review hearings after a child enters foster care and sets forth specific evaluations and determinations that must be made at the review hearings.

[4]     HRS § 587-31 provides, *inter alia*:

§ **587A-31 Permanency hearing.** (a)  A permanency hearing shall be conducted within twelve months of the child's date of entry into foster care[.] . . .
        . . . .

(c)     At each permanency hearing, the court shall make written findings pertaining to:
(1)     The extent to which each party has complied with the service plan and progressed in making the home safe;
(2)     Whether the current placement of the child continues to be appropriate and in the best interests of the child or if another in-state or out-of-state placement should be considered;
(3)     The court's projected timetable for reunification or, if the current placement is not expected to be permanent, placement in an adoptive home, with a legal guardian, or under
(continued...)

3

[4](...continued)

> the permanent custody of the department or an authorized agency;
>
>   . . . .
>
> (5)   The appropriate permanency goal for the child, including whether a change in goal is necessary;
>
> (6)   Whether the department has made reasonable efforts to finalize the permanency goal in effect for the child and a summary of those efforts;
>
> (7)   The date by which the permanency goal for the child is to be achieved;
>
>   . . . .
>
> (d)   At each permanency hearing, the court shall order:
>
> (1)   The child's reunification with a parent or parents;
>
> (2)   The child's continued placement in foster care, where:
>
>   (A)   Reunification is expected to occur within a time frame that is consistent with the developmental needs of the child; and
>
>   (B)   The safety and health of the child can be adequately safeguarded; or
>
> (3)   A permanent plan with a goal of:
>
>   (A)   Placing the child for adoption and when the department will file a motion to set the matter for the termination of parental rights;
>
>   (B)   Placing the child for legal guardianship if the department documents and presents to the court a compelling reason why termination of parental rights and adoption are not in the best interests of the child; or
>
>   (C)   Awarding permanent custody to the department or an authorized agency, if the department documents and presents to the court a compelling reason why adoption and legal guardianship are not in the best interests of the child.
>
> (e)   At each permanency hearing where a permanent plan is ordered, the court shall make appropriate orders to ensure timely implementation of the permanent plan and to ensure that the plan is accomplished within a specified period of time.
>
> (f)   A permanency hearing may be held concurrently with a periodic review hearing.
>
> (g)   If the child has been in foster care under the responsibility of the department for a total of twelve consecutive months . . ., the department shall file a motion to terminate parental rights, unless:
>
> (1)   The department has documented in the safe family home factors or other written report submitted to the court a compelling reason why it is not in the best interest of the child to file a motion; or

(continued...)

December 10, 2018 hearing, the court, *inter alia*, took testimony of the DHS social worker regarding the DHS Safe Family Home Report dated September 18, 2018, at which time DHS was not requesting to terminate parental rights, and admitted the DHS Safe Family Home Report dated December 4, 2018, into evidence. Before further testimony was given, Mother arrived at the hearing and default was set aside, prospectively only. As no Chuukese interpreters were present in the courthouse, the Family Court continued the remainder of the hearing to January 7, 2019.

At the January 7, 2019 hearing, the DHS social worker testified that she stood by the DHS Safe Family Home Report dated December 4, 2018, which, in sum, reported that DHS had no contact with Mother since the October 3, 2018 hearing, notwithstanding efforts to contact her and that DHS was disappointed at Mother's lack of cooperation to attend, participate in, and complete services. The DHS social worker further testified that, since the December hearing, Mother was re-referred to services, but had not been contacted yet. DHS wanted Mother to reengage in therapy. It was DHS's position that if Mother was dedicated to finishing up therapy, she should be able to provide a safe family home, but Mother's continued relationship with Boyfriend, who

---

[4](...continued)

(2)    The department has not provided to the family of the child, consistent with the time period required in the service plan, such services as the department deems necessary for the safe return of the child to the family home.

(h)    Nothing in this section shall prevent the department from filing a motion to terminate parental rights if the department determines that the criteria for terminating parental rights are present.

also had not completed services (sex offender treatment and a pychosexual assessment), remained a concern. The social worker's understanding was that Mother still lived with Boyfriend.

Mother's attorney declined to call Mother as a witness and argued that notwithstanding that Mother had cancelled or discontinued therapy meetings for various reasons, including a family emergency and a subsequent delay in returning from Chuuk, Mother wanted to reengage in services. Mother's attorney further argued that there was no compelling reason to proceed to a termination petition, as there was no permanent plan for KS. The guardian *ad litem* for KS emphasized that Mother was not currently able to provide a safe family home even with the assistance of a service plan because Mother remained in a relationship with Boyfriend, and it was not in KS's best interest to delay permanency.

The Family Court stated its consideration of all exhibits, testimony, and arguments. The court noted that while mother did have a family emergency, she had stopped engaging in services prior to that. The court discussed that KS had not had visits with Mother, at the recommendation of KS's therapist, but also because KS did not want to return to Mother as long as she was with Boyfriend. The court recounted the initial allegations of sex abuse and the filing of a criminal complaint, which Mother withdrew, but which may have been proceeding again pursuant to cooperation with DHS. The Family Court described Mother's progress as "extremely minimal" and Mother as lacking insight as to the sex abuse allegations, noting Mother's continued

relationship with Boyfriend. The court expressed doubt as to the social worker's opinion that Mother may be able to provide a safe family home with the assistance of a service plan in light of the fact that Mother was still living with Boyfriend after more than fourteen months since the case began, appearing to choose her Boyfriend over her daughter. Noting that Mother presented no evidence, and relied solely on cross-examination of the DHS social worker, the Family Court concluded that Mother failed to meet her burden to show cause why the case should not be set for a termination hearing, pursuant to HRS § 587A-29, and ordered DHS to file a motion to terminate parental rights within thirty days of the hearing. Among other things, the court set a further hearing for April 18, 2019, as a periodic review and permanency hearing, as well as a hearing on a motion to terminate parental rights, provided that one was timely filed.[5]

DHS filed a Motion to Terminate Parental Rights on February 11, 2019 (**Motion to Terminate**), and served Mother's counsel by mail on February 12, 2019. While not within thirty days of the January 7, 2019 hearing, as ordered by the Family Court, the filing date and service provided Mother ample advance notice and an opportunity to be heard at the April 18, 2019 hearing. No written response was filed by Mother.

---

[5] Although the Family Court set the hearing on December 10, 2018, as continued on January 7, 2019, as a Permanency hearing, as required at that point by HRS § 587A-31, we note that the Family Court did not, in its written order or otherwise, enter all of the written findings required by the statute. Although Mother raises no point of error as to this deficiency, in particular, written findings as required pursuant to HRS § 587A-31(c)(1), pertaining to the extent to which Mother complied with the service plan and progressed in making the home safe, may have aided Mother in better understanding where she stood in the case and the precariousness of her situation with respect to permanency.

Although her attorney was present, Mother failed to appear at the April 18, 2019 hearing.  Counsel said that she did not know why Mother was not present and objected to her being defaulted, noting that Mother had been at every other hearing.  Counsel represented that her last communication with Mother, which was "just to remind her of the hearing coming up", was at the beginning of April.  She had previously spoken with Mother, since the January 2019 hearing, but before receiving the Motion to Terminate.  The Family Court indicated that it was going to allow the State to proceed with the Motion to Terminate.  DHS elicited testimony from its social worker, Mother's attorney was allowed cross-examination and argument, and Mother's attorney requested a one-month continuance.  Noting that it had informed Mother previously of the consequences for failure to appear, the Family Court denied the motion to continue.

After further proceedings, the court announced that Mother was being defaulted (noting Father had been previously defaulted), all testimony received to date was credible, the guardian *ad litem* was in support of termination, and by clear and convincing evidence, *inter alia*, Mother was presently unwilling or unable to provide KS with a safe family home even with a service plan, and it was not reasonably foreseeable that Mother would become willing and able to provide KS with a safe family home even with the assistance of a service plan within a reasonable period of time, generally not to exceed two years.  The court briefly stated the facts supporting its findings and conclusions, announced further rulings, and granted counsel's

request for a thirty-day discharge date so that if Mother contacted her, counsel would have a vehicle to be able to file something on Mother's behalf. The court further stated that if counsel gained contact with Mother, counsel could file any appropriate motion. The Termination Order and Letters of Permanent Custody were entered on April 23, 2019.

Mother argues that it was an abuse of discretion for the Family Court to proceed as it did at the April 18, 2019 hearing because of the harshness of the sanctions of defaulting her and granting the Motion to Terminate. The record is clear, however, that the Family Court's entry of the Termination Order was based on all of the circumstances of the case, especially the testimony and evidence presented to the Family Court, as well as length of time KS had been in foster care and the parties' positions and arguments; the Termination Order was not entered as a sanction against Mother.

With respect to the default entered against Mother, Mother points to this court's (**ICA's**) opinion in In re TW, 124 Hawai'i 468, 469, 248 P.3d 234, 235 (App. 2011), which recognized that "parents have a fundamental liberty interest in the care, custody, and management of their children, and parental rights cannot be denied without an opportunity for parents to be heard at a meaningful time and in a meaningful manner." (Citation omitted; format altered). In that case, the ICA observed that: it was the first hearing for which the mother failed to appear; the motion for termination was filed six days before the hearing; at the hearing on termination, the mother's

9

counsel reported that counsel had not received the motion so she had not sent it to the mother; and the mother had actively engaged in the services required by the service plan and attended scheduled visitations with TW, as well attended every other court hearing over an eighteen-month period. Id. at 471, 474, 248 P.3d at 237, 240. The ICA explained that through her actions and conduct, TW's mother "displayed a strong and sustained interest in participating in the family court proceedings affecting her parental rights over [TW] and in securing reunification with [TW]" and emphasized that the divestment of the mother's parental rights was in fact a sanction for her failure to appear, noting that the hearing-in-question had been set only as a procedural, trial-setting date. Id. at 474, 248 P.3d at 240. Under those circumstances, the ICA held that the sanction of default and divestiture of the mother's parental rights was "decidedly and manifestly disproportionate[.]" Id.

Here, Mother argues that she was defaulted and her parental rights were terminated based on a single missed hearing, just like in In re TW. As stated above, although the default against Mother effectively cut off her opportunity to testify in opposition to the Motion to Terminate, the Termination Order was entered based on the evidence and arguments presented to the Family Court throughout the proceedings, including at the April 18, 2019 hearing, in which Mother's counsel fully participated, including witness examination and argument. Mother's counsel never indicated to the court that she would have called Mother to testify at the April 18, 2019 hearing, if Mother had appeared,

and never made an offer of proof as to what testimony or other evidence might have been offered in opposition to the Motion to Terminate if Mother had appeared at the April 18, 2019 hearing.[6]

With respect to the default, Mother appears to argue in particular, that FOFs 40-43 are without substantial support in the record, and a finding of these facts after divesting her of the right to be heard is an abuse of discretion. These findings are as follows:

> 40. Mother continues to reside with and maintain a relationship with [Boyfriend].
>
> 41. Mother does not intend to live separately from [Boyfriend].
>
> 42. Mother still does not believe [Boyfriend] sexually abused [KS].
>
> 43. Mother was given a reasonable opportunity to reunify with [KS].

There is substantial evidence in the record to support that Mother continued to reside with Boyfriend, did not intend to live separately, and did not believe that he sexually abused KS. At no point in the case did Mother deny these facts, either in court or during therapy or other services, as reported in exhibits entered into evidence. At the April 18, 2019 hearing, Mother's counsel made no offer of proof nor otherwise argued that Mother was prepared to testify to the contrary. Even after the April 18, 2019 hearing, Mother made no proffer or argument to the contrary when she sought to set aside the Termination Order. The record also supports the Family Court's finding that Mother was

---

[6] We note that Mother did not, at any point in the case, identify anyone other than herself and Boyfriend as potential witnesses and, when given the opportunity to testify at the January 7, 2019 hearing, Mother declined to testify in an attempt to show cause as to why the case should not be set for a termination of parental rights hearing.

given a reasonable opportunity to reunite with KS, as well as the Family Court's other findings pertaining to the Motion to Terminate. Again, Mother made no offer of proof and did not otherwise argue that Mother was prepared to testify to the contrary, at the April 18, 2019 hearing or thereafter. In addition, Mother does not challenge findings that:

> 44. Despite the court's October 30, 2017 order for Mother to complete Sexual Harm Counseling/Individual/ Conjoint Family Counseling, Mother chose to stop attending therapy on September 7, 2018.

> 45. Despite the court's October 30, 2017 order for Mother to complete Parenting Education, Mother was non-clinically discharged from PARENTS, Inc. on August 22, 2018 because she had four unexcused absences.

> 46. Mother has yet to complete Sexual Harm Counseling/Individual/Conjoint Family Counseling and Parenting Education.

Finally, while we are aware of the gravity of the Family Court's entry of default at this critical juncture in these proceedings based on a single, unexplained absence, the circumstances of this case are very different than the circumstances in In re TW. Here, based on the Family Court's ruling on January 7, 2019, where Mother was present, as well as based on the fact that the Motion to Terminate was filed and served more than two months before the April 18, 2019 hearing, Mother had ample notice of the date, time, and nature of the hearing on the State's Motion to Terminate.[7] Here, although Mother participated in services for a period of time, she no-

_____

[7] At the April 18, 2019 hearing, Mother's counsel raised concerns about whether Mother received a copy of the motion, based on a possible change of address, but at no point at the April 18, 2019 hearing or thereafter did counsel represent that the copy of the motion that she mailed to Mother was returned, that Mother in fact changed her address, that Mother was unaware of the hearing date and time, or that Mother did not in fact receive a copy of the motion. On the contrary, counsel represented that she had contacted Mother earlier in the month to remind her of the hearing.

showed, cancelled appointments, made little effort to stay in contact with KS, and, as the Family Court stated at the January 7, 2019 hearing, appeared to choose her relationship with Boyfriend over her relationship with KS. While there is nothing in the record to suggest that a short continuance would have unduly infringed upon the Family Court's need to manage its docket or prejudiced DHS, there was evidence that Mother's continued lack of engagement in services and the lack of permanence in KS's life was causing distress to KS. Here, the Family Court made clear that Mother could file an appropriate motion for relief from its April 18, 2019 rulings. For these reasons, under the circumstances of this case, we cannot conclude that the Family Court abused its discretion in entering default against Mother at the April 18, 2019 hearing.[8]

(2) Mother briefly contends that the Family Court abused its discretion in conjunction with its entry of the Order Denying Immediate Review. We conclude that Mother's contentions are without merit.

In BDM, Inc. v. Sageco, 57 Haw. 73, 77, 549 P.2d 1147, 1150 (1976), the supreme court held that a motion to set aside an entry of default should be granted if a court "finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act." (Citations omitted).

---

[8] Mother makes no other argument on the substance of the Family Court's Termination Order.

On May 15, 2019, Mother submitted a Motion for Immediate Review, along with an *ex parte* motion for shortened time to hear the Motion for Immediate Review. The Motion for Immediate Review stated that it sought to set aside Mother's default and the Termination Order, and asked to set the issue of termination for trial. It cited HRS § 587A-30(a) and Rule 10 of the Family Court Rules and was supported only by a declaration of counsel, but suggested that further evidence might be adduced at the hearing on the motion. Counsel's declaration stated only that:

> 1. Declarant is MOTHER's court-appointed counsel in the above-entitled matter;
>
> 2. Declarant is informed and of the good faith and belief that on or around, April 30, 2019, Mother was in communication with the subject child's [resource caregiver (RCG)] in regards to [KS] and visitation and was told that RCG would check with DHS and get back to Mother;
>
> 3. Declarant is informed and of the good faith and belief that on May 15, 2019, Mother contacted counsel to see if any word had been received from counsel in regards to visits as RCG did not yet get back to Mother and to file a motion.
>
> 4. After consultation, Mother requested this motion be filed seeking mediation and a trial on the issue of termination of parental rights.
>
> 5. Based on the foregoing and any evidence adduced at a hearing on this motion, Mother request 1) her default be set aside prospectively; 2) request mediation and a trial on the motion to terminate her parental rights as soon as possible; and 3) that this serve as notice of appeal for the orders defaulting her and terminating her parental rights entered on April 18, 2019.
>
> 6. I hereby declare under penalty of law that the foregoing is true and correct.

On May 20, 2019, the *ex parte* motion for shortened time was granted and the Motion for Immediate Review was set for hearing on May 22, 2019. Mother did not appear at the May 22, 2019 hearing. Counsel represented to the Family Court that she had informed Mother that because of the *ex parte* motion the

matter would be "short-set", but Mother informed her, when counsel gave her the date, that she was not able to take off from work on such short notice, that she would probably be fired, and she did not want to lose her job. Mother was seeking a continuance to see if she could request time off. The Family Court noted the importance of the matter and that May 23, 2019, would be thirty days from the date of the entry of the Termination Order. Counsel noted that Mother called the bailiff asking to appear by phone, but counsel had informed Mother that such request was unlikely to be granted. The court noted, *inter alia*, that a motion to set aside a default is an evidentiary motion and that for various reasons related to assessing credibility, possible coaching of a witness, and the ability to confront and cross-examine a witness, Mother's request to appear by telephone would be denied. The court offered to excuse Mother, but questioned how counsel would support her requested relief. Counsel in essence offered that Mother's testimony would be that she did not appear at the April 18, 2019 hearing because she woke up late and then had transportation issues. Counsel made no attempt to address what Mother's meritorious defense to the Motion to Terminate would have been, or whether the nondefaulting parties would have been prejudiced by the reopening, notwithstanding that the Family Court had just stated the standard to set aside default. In fact, counsel stated, "we don't know what the -- what [the] meritorious evidence could be."

The court noted that it was "not aware of any meritorious defense at this time of mother, and the court would

15

likely find that the child will be prejudiced by the reopening of the case as it would take longer to achieve permanency in this matter." Based on those reasons, and the lack of prosecution of the Motion for Immediate Review, the Family Court denied the motion. After further argument of counsel, the Family Court denied what it construed as an oral motion for reconsideration.

Upon review, we conclude that the Family Court did not clearly err in its FOFs related to the Motion for Immediate Review and did not abuse its discretion in denying Mother's request to set aside the Termination Order on the grounds that Mother failed to meet her burden for such relief.

For these reasons, the Family Court's April 23, 2019 Termination Order and Letters of Permanent Custody, as well as its May 22, 2019 Order Denying Immediate Review are affirmed.

DATED: Honolulu, Hawai'i, December 31, 2019.

On the briefs:

Crystal M. Asano,
Court-Appointed Counsel,
for Mother-Appellant.

Michael V. Domingo,
Julio Herrera,
Patrick A. Pascual,
Erin K.S. Torres,
Deputy Attorneys General,
for Petitioner-Appellee
 Department of Human Services.

Michelle K. Moorhead,
Ashlyn L. Whitbeck,
(Legal Aid Society of Hawaii),
Guardian Ad Litem.

Chief Judge

Associate Judge

Associate Judge